UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                                                     :
WILLIAM THROWER,                                                     :
                                                                     :        04-CR-0903 (ARR)
                                        Petitioner,                  :
                                                                     :
           -against-                                                 :        OPINION AND ORDER
                                                                     :
UNITED STATES OF AMERICA,                                            :
                                                                     :
                                        Respondent.                  :
                                                                     :
------------------------------------------------------------------- X

ROSS, United States District Judge:

Petitioner William Thrower brings this motion to vacate, set aside, or correct his sentence

under 28 U.S.C. § 2255(a). In 2005, Thrower was convicted of being a felon in possession of a

firearm in violation of 18 U.S.C. § 922(g)(1), an offense that, on its own, carries a maximum

penalty of 10 years' imprisonment, *see id.* § 924(a)(2). Because I determined that Thrower had

three previous convictions for violent felonies, he was subject to a mandatory minimum of 15

years' imprisonment under the Armed Career Criminal Act ("ACCA"), *see id.* § 924(e)(1).

Thrower argues that his 15-year sentence is no longer valid in light of *Johnson v. United States*,

135 S. Ct. 2551 (2015). In *Johnson*, the Supreme Court struck down the ACCA's residual clause

as unconstitutionally vague. *Id.* at 2257. According to Thrower, he no longer has three

qualifying predicate offenses because I may have relied on the residual clause in classifying one

or more of his convictions as violent felonies. Without three qualifying convictions, Thrower is

subject to a maximum prison sentence of 10 years, which he has already served. For the reasons

explained below, Thrower's motion is granted.

# BACKGROUND

In April 2005, Thrower was convicted by a jury of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Compl., Dkt. #1;[1] Minute Entry, Dkt. #28. At the time of sentencing, in 2008, Thrower had the following five prior felony convictions: (1) a 1981 conviction for first degree robbery, in violation of New York Penal Law § 160.15; (2) a 1981 conviction for third degree burglary, in violation of New York Penal Law § 140.20; (3) a 1993 conviction for fourth degree larceny, in violation of New York Penal Law § 155.30; (4) a 1994 conviction for attempted third degree robbery, in violation of New York Penal Law § 160.05; and (5) a 2000 conviction for third degree robbery, in violation of New York Penal Law § 160.05. I determined that at least three of these convictions were for "violent felonies" within the meaning of the ACCA, such that Thrower was subject to a mandatory minimum sentence of 15 years' imprisonment, *see* 18 U.S.C. § 924(e)(1). Sentencing Tr. at 3–6, 16, Gov't's First Opp'n Ex. B, Dkt. #92-2. I did not specify during the sentencing hearing which of the five felonies served as the three predicates under the ACCA, though I did refer to the 1981 robbery as the "first predicate violent felony." *Id.* at 5. Additionally, I noted that "the statute specifically identifies . . . burglary," which was "precisely [the] crime for which defendant was convicted [in 1981]." *Id.* at 5–6. I sentenced Thrower to the mandatory minimum 15-year prison term. *Id.* at 16.

Thrower appealed his conviction and sentence, and the Second Circuit affirmed. *United States v. Thrower*, 584 F.3d 70, 75 (2d Cir. 2009) (per curiam). On direct appeal, Thrower argued that he did "not have the requisite number of offenses necessary to qualify for the ACCA." *Id.* at 72. Specifically, Thrower asserted "that two of his offenses [did] not count

---

[1]    Unless otherwise noted, the citations to docket entries are in case number 04-cr-903.

because he received a Certificate of Relief from Disabilities that restored his civil rights, and that a third conviction—larceny in the fourth degree—[did] not qualify as a violent felony." *Id.* The Second Circuit concluded that fourth degree larceny under New York law "qualif[ied] as a violent felony under the residual clause for purposes of the ACCA." *Id.* Accordingly, "Thrower ha[d] three eligible convictions that support[ed] the district court's ACCA enhancement," and the court did "not [need to] reach the Certificate of Relief from Disabilities issue." *Id.*

In October 2011, Thrower filed a petition for a writ of habeas corpus under § 2255, arguing that his counsel had been ineffective. *See* Mot. to Vacate, Set Aside or Correct Sentence, No. 11-cv-4858, Dkt. #1. I concluded that Thrower's claims lacked merit and thus denied the petition. *See* Order at 2, No. 11-cv-4858, Dkt. #21. Thrower requested a certificate of appealability from the Second Circuit, which the Second Circuit denied. *See* Mandate, No. 11-cv-4858, Dkt. #25.

In June 2016, Thrower sought leave from the Second Circuit to file the instant successive § 2255 petition on the grounds that his 15-year sentence is no longer valid in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015). *See* Mot. for an Order Authorizing the District Court to Consider a Successive or Second Mot. to Vacate, Set Aside or Correct Sentence at 5–7, Dkt. #82-1. On August 26, 2016, the Second Circuit granted the motion. Mandate, Dkt. #82.

Thrower filed the instant motion *pro se* on September 9, 2016. *See* First Pet., Dkt. #83. On January 6, 2017—after the government had responded to Thrower's *pro se* petition, but before Thrower filed his reply—I appointed counsel for Thrower, and his petition was subsequently fully re-briefed.[2] *See* Orders (Jan. 6, 2017). The fully briefed petition is now before the court.

---

[2] I cite to Thrower's *pro se* petition, Dkt. #73, as "First Pet.", and to his counseled brief, Dkt. #97, as "Second Pet." Likewise, I cite to the government's opposition to Thrower's *pro se* petition, Dkt. #92,

## STANDARD OF REVIEW

28 U.S.C. § 2255(a) allows a prisoner to move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Even if the petitioner is able to show that the sentencing court committed a constitutional error, the error cannot be redressed through a § 2255 petition unless it had a "substantial and injurious effect" that resulted in "actual prejudice" to the petitioner. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citations omitted); *see also Underwood v. United States*, 166 F.3d 84, 87 (2d Cir. 1999) (applying *Brecht*'s harmless error standard to § 2255 petition). The petitioner bears the overall burden of proving by a preponderance of the evidence that he is entitled to relief. *Alli-Balogun v. United States*, 114 F. Supp. 3d 4, 50 (E.D.N.Y. 2015).

## DISCUSSION

18 U.S.C. § 922(g)(1) prohibits any person who has been convicted of a felony from possessing a firearm. On its own, this crime is punishable by a maximum of 10 years' imprisonment. *Id.* § 924(a)(2). However, the ACCA mandates a minimum 15-year sentence for a defendant who illegally possesses a firearm in violation of 18 U.S.C. § 922(g) "and has three previous convictions . . . for a violent felony." *Id.* § 924(e)(1). The statute defines "violent felony" as follows:

> [A]ny crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or

as "Gov't's First Opp'n," and to the government's opposition to Thrower's counseled brief, Dkt #100, as "Gov't's Second Opp'n."

destructive device that would be punishable by imprisonment for such term if committed by an adult, that –

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves the use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another* . . . .

*Id.* § 924(e)(2)(B) (emphasis added). I will refer to subsection (i) as the "force clause," to the nonitalicized portion of subsection (ii) as the "enumerated offense clause," and to the italicized portion of subsection (ii) as the "residual clause." As stated above, in *Johnson v. United States*, 135 S. Ct. 2251 (2015), the Supreme Court struck down the residual clause as unconstitutionally vague. *Id.* at 2557. The Court held that this ruling applied retroactively on collateral review of convictions in *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016).

To prevail on his motion, Thrower must first demonstrate that the court committed constitutional error. *See United States v. Diaz*, No. 16-cv-0323, 2016 WL 4524785, at *5 (W.D.N.Y. Aug. 30, 2016). Thrower can satisfy this requirement by showing that the court may have relied on the residual clause during sentencing. *See id.* Once Thrower has demonstrated constitutional error, he then bears the burden of proving that the error was prejudicial. *See id.* Thrower can meet this burden by showing that, absent the residual clause, he no longer has three convictions for violent felonies. *See id.* at *6. For the reasons explained below, Thrower has met his burden of proving both constitutional error and prejudice.

## A. Thrower Has Met His Burden of Demonstrating Constitutional Error

The parties dispute what burden Thrower must meet to demonstrate constitutional error at sentencing. The government argues that Thrower "bears the burden of demonstrating that the district court *in fact relied* on the residual clause in sentencing him under the ACCA." Gov't's First Opp'n at 4, Dkt. #92 (emphasis added). According to Thrower, he need only show that the

court *may have relied* on the residual clause. Second Pet. at 5–7, Dkt. #97. As explained below, I agree with Thrower's position.

In support of its argument regarding the burden of proof, the government cites *In re Moore*, 830 F.3d 1268 (11th Cir. 2016). In *Moore*, the Eleventh Circuit stated that a petitioner bringing a § 2255 motion bears the "burden of showing that he is entitled to relief" and that a petitioner cannot meet that burden in a *Johnson* case "unless he proves that he was sentenced using the residual clause." *Id.* at 1273. Thus, "[i]f the district court cannot determine whether the residual clause was used in sentencing and affected the final sentence—if the court cannot tell one way or the other—the district court must deny the § 2255 motion." *Id.* The government also cites a Second Circuit case that generally states that a petitioner bears the burden of proving that he is entitled to relief under § 2255. *See Zovluck v. United States*, 448 F.2d 339, 341 (2d Cir. 1971) (stating that, in an appeal from the district court's denial of a habeas petition, "[t]here is no doubt but that appellant had the burden of proof").[3]

I find *Moore* unpersuasive. First of all, it is not settled law even in the Eleventh Circuit. In an opinion published one week after *Moore*, the Eleventh Circuit stated that the "commentary [in *Moore*] undoubtedly is dicta." *In re Chance*, 831 F.3d 1335, 1339 (11th Cir. 2016). The court proceeded to say that the "dicta . . . also seems quite wrong." *Id.* First, the *Chance* court reasoned that a district court following *Moore*'s dicta could avoid determining whether a crime actually qualifies as a violent felony under either the enumerated offense clause or the force clause "unless the sentencing judge uttered the magic words 'residual clause.'" *See id.* at 1340. Second, the court noted that "[n]othing in the law requires a judge to specify which clause . . . it

---

[3] This point is not contested, and it does not answer the specific question at issue here: whether a petitioner can meet his burden of demonstrating constitutional error under *Johnson* where the sentencing record does not reveal on which ACCA clause a district court relied.

relied upon in imposing a sentence." *Id.* Thus, if a sentencing judge happened to specify that she was relying on the residual clause during one sentencing hearing and not another, the dicta in *Moore* would subject similarly situated defendants to different treatment "based solely on a chance remark." *Id.* at 1341.

I agree with the *Chance* court's reasoning. Indeed, as Thrower points out, the vast majority of the district courts that have considered the issue have decided that a petitioner meets his burden of proving constitutional error if the record is unclear and the petitioner shows that the sentencing court *may have relied* on the residual clause in calculating his sentence. *See* Second Pet. at 5 n.4, Dkt. #97 (collecting cases). These courts have rejected the proposition that, in order to succeed on a § 2255 petition under *Johnson*, a petitioner must show that the sentencing court actually relied on the residual clause during sentencing. *See, e.g.*, *United States v. Ladwig*, 192 F. Supp. 3d 1153, 1159 (E.D. Wash. 2016) ("Because [petitioner] has shown that the Court might have relied upon the unconstitutional residual clause in finding that his . . . convictions qualified as violent felonies, the Court finds that he has established constitutional error."); *Shabazz v. United States*, No. 3:16-cv-1083, 2017 WL 27394, at *5 (D. Conn. Jan. 3, 2017) ("I find compelling the arguments from other courts that . . . a silence in the record should be read in favor of the petitioner because the Residual Clause, written to be a capacious catch-all, was the most direct and efficient route to establishing an ACCA predicate at the time. . . . Moreover, requiring a petitioner to make an affirmative showing on a record that . . . was made at a time when I had no reason to identify on which ACCA clause his sentence relied would be inequitable and would render 2015 *Johnson* relief virtually impossible to obtain."); *Curry v. United States*, Nos. 16-CV-22898, 05-CR-20399, 2016 WL 6997503, at *3 (S.D. Fla. Nov. 30, 2016) ("The Court finds *Chance* persuasive and declines to follow *Moore*'s suggestion that successive

petitioners must prove the Court relied upon the ACCA residual clause 'in fact' at sentencing.");

*United States v. Wolf*, No. 04-CR-347-1, 2016 WL 6433151, at *4 (M.D. Pa. Oct. 31, 2016)

("We agree with the Eleventh Circuit's well-reasoned decision in *Chance*, which has been

followed by the majority of other district courts who have addressed the issue."); *United States v.*

*Winston*, --- F. Supp. 3d ---, No. 3:01-cr-00079, 2016 WL 4940211, at *6 (W.D. Va. Sept. 16,

2016) ("*Chance* convincingly explains why *Moore* is wrong. . . . [C]ourts have held that—when

unclear on which ACCA clause the sentencing judge rested a predicate conviction—the

petitioner's burden is to show only that the sentencing judge may have used the residual

clause."); *Andrews v. United States*, No. 2:16-cv-00501, 2016 WL 4734593, at *5 (D. Utah Sept.

9, 2016) ("If, post-*Johnson*, a petitioner's sentence is no longer authorized by law, 'proof of what

the judge said or thought' is irrelevant." (quoting *Chance*, 831 F.3d at 1341)); *Diaz*, 2016 WL

4524785, at *5 (concluding that petitioner "demonstrated constitutional error simply by showing

that the court might have relied on an unconstitutional alternative" (alteration omitted) (quoting

*Ladwig*, 192 F. Supp. 3d at 1159)).

     I agree with the approach taken by these courts. Adopting the government's position

regarding Thrower's burden of proof would mean that Thrower's petition would fail simply

because I did not, during the sentencing proceeding, specify on which ACCA clauses I was

relying. This was simply not an issue at the time, when neither I nor the parties could have

predicted that one of the clauses would be found unconstitutional seven years later. It cannot be

the case that my lack of specificity means that Thrower's sentence should be upheld regardless

of whether it is still lawful. Accordingly, I conclude that a petitioner can meet his burden of

proving constitutional error by demonstrating that his sentence *may have been* based on the

residual clause.

Thrower has met his burden here.  It is not entirely clear from the sentencing record which of Thrower's five felony convictions served as the three ACCA predicates, or which clause, or clauses, of the ACCA I relied on in deciding that they were proper predicates.  During the sentencing hearing, I did refer to the 1981 robbery as the "first predicate violent felony" and noted that "the statute specifically identifies . . . burglary," which was "precisely [the] crime for which defendant was convicted."  Sentencing Tr. at 5–6, Gov't's First Opp'n Ex. B, Dkt. #92-2.  Thus, the record reflects that I determined that first degree robbery and third degree burglary were violent felonies, and that I classified burglary as a violent felony under the enumerated offense clause.  Still, two points remain unclear: (1) which conviction served as the third predicate, and (2) which clause, or clauses, I relied on to classify the first degree robbery and the third conviction as violent felonies.  Thrower did not raise any specific arguments on these points at sentencing, so I did not see a need to specify my reasoning further.  *See id.* at 4–6.  As a result, I cannot say based on the record, or on any independent recollection, that I did not rely on the residual clause in sentencing Thrower.

Because Thrower has met his burden of demonstrating constitutional error, I must determine whether this error was prejudicial.[4]

## B.  The Constitutional Error Was Prejudicial

To prove that any reliance on the residual clause during sentencing was prejudicial, Thrower must demonstrate that, absent the residual clause, he does not have three previous

---

[4]    A minority of district courts in this circuit have determined that harmless error review should not be conducted in this context because a "*Johnson* error is a structural error not amenable to *Brecht*'s harmless error review."  *Shabazz v. United States*, No. 3:16-cv-1083, 2017 WL 27394, at *6 (D. Conn. Jan. 3, 2017) (citing *Villanueva v. United States*, 191 F. Supp. 3d 178 (D. Conn. 2016)).  Because I conclude that, in any event, my possible reliance on the residual clause was not harmless, I need not resolve the question of whether a *Johnson* error is a structural error.

convictions for violent felonies for purposes of the ACCA.  *See Diaz*, 2016 WL 4524785, at *6.

As stated above, Thrower had five previous felony convictions when he was sentenced.  The

government does not contend that Thrower's larceny conviction qualifies as a violent felony.[5]

Nevertheless, the government claims that any reliance on the residual clause was harmless

because Thrower's burglary conviction qualifies as a violent felony under the ACCA's

enumerated offense clause, and his three robbery convictions qualify as violent felonies under

the force clause.  Gov't's First Opp'n at 4, 7, Dkt. #92.  For the reasons explained below, I

conclude that Thrower's convictions for third degree robbery and attempted third degree robbery

are not qualifying violent felonies under the ACCA's force clause.  Without the third degree

robbery convictions, Thrower has at most two convictions for violent felonies (the burglary

conviction and the first degree robbery conviction), which means that he is not subject to the

ACCA's 15-year mandatory minimum and is instead subject to a maximum of 10 years'

imprisonment.[6]  *See* 18 U.S.C. §§ 924(a)(2), 924(e)(1).  Any reliance on the residual clause in

sentencing Thrower was thus not harmless.

     In reaching this conclusion, I first decide that I must look to current law, and not the law

at the time of Thrower's sentencing, to determine whether Thrower's third degree robbery

convictions are violent felonies under the force clause.  I then conclude that third degree robbery

under New York law does not qualify as a violent felony.

---

[5]     The government likely does not rely on Thrower's larceny conviction because, when upholding Thrower's sentence on direct appeal, the Second Circuit specified that larceny qualified as a violent felony under the ACCA's residual clause.  *Thrower*, 584 F.3d at 72.

[6]     Accordingly, I need not decide whether third degree burglary and first degree robbery are qualifying violent felonies.

1. *In Deciding Whether Any Constitutional Error Was Harmless, the Court Applies Current Law*

The parties dispute whether I should look to current law, or try to ascertain the law as it stood at the time of Thrower's sentencing, in order to determine whether Thrower has three convictions for violent felonies without the residual clause, such that any reliance on the residual clause was harmless. The government contends that Thrower may not rely on cases decided after his sentencing to argue that robbery does not qualify as a violent felony under the force clause because such an argument is not based on *Johnson*, and because "Thrower is not entitled at this stage to the benefit of changes in statutory interpretation that have occurred over the years since he was sentenced." Gov't's First Opp'n at 4–5, Dkt. #92. Thrower responds that "the determination whether there are three prior felonies that qualify as predicates . . . is properly based on the law as it is interpreted today." Second Pet. at 7, Dkt. #97. For the reasons explained below, I conclude that I must look to current case law to determine whether third degree robbery is a violent felony under the ACCA's force clause.

a. Thrower's Argument Is Properly Based on *Johnson*

First, I reject the government's assertion that Thrower's argument—that robbery is not a violent felony under the force clause—is not actually based on *Johnson* because that case struck down only the residual clause and left the force clause unaffected. Though, as stated above, there is no evidence in the sentencing record elucidating whether I found robbery to be a violent felony under the force clause or the residual clause, prior to *Johnson*, Thrower "had no viable challenge to his predicate robbery convictions because, even if he could have established that robbery in New York did not qualify under the ACCA's force clause, his prior convictions for third-degree robbery . . . likely would have qualified under the residual clause." *Diaz*, 2016 WL 4524785, at *5. Accordingly, "[i]t is only as a result of . . . *Johnson*'s voiding of the residual

clause that [Thrower] could 'reasonably argue that he is no longer eligible for the ACCA enhancement.'" *Id.* (quoting *Ladwig*, 192 F. Supp. 3d at 1159–60); *see also Shabazz*, 2017 WL 27394, at *6 ("[T]he availability of [the petitioner's force clause] argument . . . is wholly a product of the new rule announced in 2015 *Johnson*. Prior to 2015 *Johnson*, [petitioner] would not have had a viable challenge to his predicate robbery convictions because the [r]esidual clause would have picked up wherever the [force] clause left off."). I am thus unpersuaded by the government's position that Thrower's challenge to the classification of his robbery convictions as predicate violent felonies is not based on *Johnson*.

The government cites *Stanley v. United States*, 827 F.3d 562 (7th Cir. 2016), in support of the proposition that a challenge to the classification of a conviction as a violent felony is unrelated to *Johnson*. Gov't's First Opp'n at 5, Dkt. #92. In *Stanley*, however, the Seventh Circuit was able to determine conclusively that each of the petitioner's prior convictions was unaffected by *Johnson*. *Stanley*, 827 F.3d at 564. Specifically, the petitioner had a drug conviction, which is not implicated by the definition of a violent felony. *Id.*; *see also* 18 U.S.C. § 924(e) (stating that 15-year mandatory minimum applies to "a person who . . . has three previous convictions . . . for a violent felony *or a serious drug offense*" (emphasis added)). Second, the petitioner had a conviction for illegal possession of a firearm, which was not a proper predicate felony "not because of *Johnson*, but because . . . [t]he Sentencing Commission has concluded that a felon's possession of a gun . . . is not a crime of violence . . . ." *Stanley*, 827 F.3d at 565. Finally, the petitioner had a conviction for aggravated battery of a police officer, which "[t]he district court counted . . . under the [force] clause." *Id.* Thus, the petitioner in *Stanley* did not have a viable argument that his sentence was affected by the residual clause. Here, by contrast, I may have relied on the residual clause in concluding that Thrower had three

convictions for violent felonies. Indeed, as Thrower points out, courts routinely relied on the residual clause pre-*Johnson* in order to classify robbery offenses as violent felonies. *See, e.g.*, *Washington v. United States*, Nos. 12-CR-6072, 16-CV-6008, 2016 WL 1572005, at *1 (W.D.N.Y. Apr. 19, 2016); *Lynch v. United States*, Nos. 03 Crim. 928, 14 Civ. 4687, 2015 WL 9450873, at *1 (S.D.N.Y. Dec. 8, 2015). Accordingly, *Stanley* does nothing to advance the government's argument. Thrower's challenge to the classification of his robbery convictions as violent felonies is based on *Johnson* and is thus cognizable on collateral review.

### b. Both Precedent and Policy Considerations Weigh in Favor of Applying Current Law on Harmless Error Review

Analogous case law, as well as important policy considerations, weigh in favor of applying current law in determining whether Thrower's third degree robbery convictions satisfy the force clause, and thus whether any reliance on the residual clause during sentencing was harmless.

The Eastern District of Washington explained the relevant public policy considerations as follows:

> Attempting to recreate the legal landscape at the time of a defendant's conviction is difficult enough on its own. But in the context of *Johnson* claims, the inquiry is made more difficult by the complicated nature of the legal issues involved. . . . An inquiry that requires judges to ignore intervening decisions that, to some degree, clear the mire of decisional law seems to beg courts to reach inconsistent results. Current case law has clarified the requisite analysis and applying that law should provide greater uniformity, helping to ensure that like defendants receive like relief.

*Ladwig*, 192 F. Supp.3d at 1160.

The concerns for fairness and consistency articulated in *Ladwig* echo the Supreme Court's rationale for applying current law retroactively "for purposes of determining whether a party has demonstrated prejudice" in the context of ineffective assistance of counsel claims under

*Strickland v. Washington*, 466 U.S. 668 (1984). *See Mosby v. Senkowski*, 470 F.3d 515, 524 (2d Cir. 2006) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). In reaching its determination that current law should apply to the prejudice analysis in *Strickland* claims, the Supreme Court reasoned that "the 'prejudice' component of the *Strickland* test . . . focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart*, 506 U.S. at 372. Such "[u]reliability or unfairness . . . result[s] if the ineffectiveness of counsel . . . deprive[s] the defendant of [a] substantive or procedural right to which the law entitles him," that is, a substantive or procedural right provided by current law. *Id.* Here, too, it would be unreliable and unfair to habeas petitioners if courts were to ignore case law clarifying statutory definitions when determining whether the petitioners' sentences are lawful.

Accordingly, numerous district courts that have considered the issue agree that courts should look to current law in deciding whether a crime constitutes a violent felony when a petitioner challenges his sentence under § 2255. *See, e.g.*, *Ladwig*, 192 F. Supp. 3d at 1161 ("Because there is precedent for doing so, and in consideration of the . . . problems raised by applying old law, the Court will apply current case law to determine whether [petitioner's] convictions qualify as predicate felonies without the residual clause."); *Diaz*, 2016 WL 4524785, at *5 ("[B]oth Supreme Court and Second Circuit precedent support the proposition that a court can and should apply current case law when determining whether a constitutional error was harmless or prejudicial in the habeas context."); *United States v. Hamilton*, --- F. Supp. 3d ---, No. 06-CR-188, 2017 WL 368512, at *4 (N.D. Okla. Jan. 25, 2017) ("Once *Johnson* permits Defendant to collaterally challenge his sentence based on a residual-clause error, the Court must apply current law on the enumerated offense clause to determine if that error was injurious or

harmless."); *Curry v. United States*, Nos. 16-CV-22898, 05-CR-20399, 2016 WL 6997503, at *3 (S.D. Fla. Nov. 30, 2016) ("The Court finds untenable the Government's position that the Court should ignore current binding precedent and instead apply the law at Curry's 2005 sentencing to determine whether Curry's burglary convictions qualified as 'crimes of violence' under the enumerated clause."); *Johnson v. United States*, No. 4:16-cv-00649, 2016 WL 6542860, at *2 (W.D. Mo. Nov. 3, 2016) ("In a § 2255 proceeding, the Court must apply current case law to determine whether the prejudice prong of *Strickland* is applicable. [Current case law] would also be applicable for purposes of harmless error calculation." (citations omitted)); *United States v. Harris*, --- F. Supp. 3d ---, No. 1:CR-06-0268, 2016 WL 4539183, at *9 (M.D. Pa. Aug. 31, 2016) ("Defendant can proceed to establish that his prior convictions do not qualify him as a career offender under the ACCA under the [force] clause or enumerated-offenses clause. . . . And he can rely on current law in doing so." (citations omitted)).

In support of its position that the court should disregard current law, the government relies on *United States v. Belk*, No. 16-765, 2016 WL 1587223 (2d Cir. Apr. 19, 2016). In *Belk*, a petitioner moved for leave to file a successive § 2255 motion arguing that, in light of *Johnson*, "his New York State robbery convictions no longer qualif[ied] as predicate offenses for ACCA purposes." *Id.* at *1. The Second Circuit denied petitioner's motion in an unpublished disposition, stating that "[t]here [was] no evidence that Petitioner's sentence was enhanced under the provision of the ACCA that was found unconstitutional in *Johnson*. In any event, at the time of his sentencing, it was clearly established in this Circuit that Petitioner's robbery convictions qualified as ACCA predicates under § 924(e)(2)(B)(i)," *id.*, which is the force clause. The court thus seemed to assume, without any analysis—or any citations—that the proper inquiry on a § 2255 motion is whether robbery qualified as a violent felony at the time of sentencing, and not

when the petitioner brought his motion. Because this unpublished, non-precedential disposition contradicts the reasoned analysis undertaken by many district courts across the country, I do not find the government's reliance on it to be persuasive.

The government also argues that the decisions on which I rely below, which clarify the definition of "violent felony" and "crime of violence,"[7] involve statutory interpretation and are thus not "retroactive." This argument misses the mark. New rules are generally not retroactive on collateral review, unless they are substantive rules or watershed rules of criminal procedure, *see Welch*, 136 S. Ct. at 1261, but decisions that shed light on statutory meaning do not announce "new rules." Rather, "[a] judicial construction of a statute is an authoritative statement of what the statute meant *before as well as after* the decision of the case giving rise to that construction." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312–13 (1994) (emphasis added). Thus, case law that has clarified the meaning of "violent felony" under the ACCA simply tells us how we ought to read the statute at issue. *Cf. Hamilton*, 2017 WL 368512, at *4 (stating that although *Mathis v. United States*, 136 S. Ct. 2243 (2016), which affected whether the petitioner's "convictions . . . qualify as violent felonies under the enumerated offense clause," did "not announce a new rule of law or have retroactive application to cases on collateral review," the court was required to apply it in deciding whether "residual-clause error . . . was injurious or harmless").

Thus, I agree with the district courts that have concluded that courts should look to current law when deciding whether possible reliance on the residual clause was harmless, as this

---

[7]     The definition of a "crime of violence," the phrase used in U.S.S.G. § 4B1.2(a), "is identical in all material respects to" the definition of "violent felony" in the ACCA. *United States v. Reyes*, 692 F.3d 453, 458 n.1 (2d Cir. 2012).

approach "is soundly based on existing precedent and important policy concerns." *Diaz*, 2016
WL 4524785, at *5.

    *2. Under Current Law, Third Degree Robbery Is Not a Violent Felony*

    I next analyze whether Thrower's third degree robbery convictions qualify as violent
felonies for purposes of the ACCA. Because robbery is not an enumerated felony in the ACCA,
*see* 18 U.S.C. § 924(e)(2)(B)(ii), these convictions would have to satisfy the statute's "force
clause" in order for Thrower's sentence to be lawful. The force clause provides that a crime is a
"violent felony" if it "has as an element the use, attempted use, or threatened use of physical
force against the person of another." *See id.* § 924(e)(2)(B)(i). I must apply the categorical
approach to determine whether third degree robbery under New York law necessarily satisfies
this requirement. *See United States v. Hill*, 832 F.3d 135, 139 (2d Cir. 2016) ("To determine
whether an offense is a crime of violence, courts employ . . . the 'categorical approach.'"
(citation omitted)); *United States v. Johnson*, --- F. Supp. 3d ---, No. 15-CR-32, 2016 WL
6684211, at *5 (E.D.N.Y. Nov. 12, 2016) (explaining the categorical approach for determining
whether a crime satisfies the force clause). "Under the categorical approach, [courts] focus on
the intrinsic nature of the offense rather than on the circumstances of the particular crime.
Consequently, only the minimum criminal conduct necessary for conviction under a particular
statute is relevant." *United States v. Acosta*, 470 F.3d 132, 135 (2d Cir. 2006). In other words, if
it is possible to commit third degree robbery *without* "the use, attempted use, or threatened use of
physical force against the person of another," then third degree robbery is not categorically a
violent felony. For the reasons explained below, I conclude that third degree robbery does not
qualify as a violent felony under the force clause.

    The government correctly notes that, before 2010, the Second Circuit held in binding,

published decisions that robbery is a violent felony under the force clause. *See, e.g.*, *United States v. Brown*, 52 F.3d 415, 426 (2d Cir. 1995). However, a 2010 Supreme Court decision, *United States v. Johnson*, 559 U.S. 133 (2010) ("*Curtis Johnson*"), changes this analysis. In *Curtis Johnson*, the Supreme Court decided that a Florida battery offense was not categorically a violent felony under the ACCA. *Id.* at 137–39. In so deciding, the Court defined the term "physical force" as it is used in § 924(e)(2)(B)(i). *See id.* at 138–39. The Court decided "that in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* at 140. The Court reasoned that, "[e]ven by itself, the word 'violent' in § 924(e)(2)(B) connotes a substantial degree of force. . . . When the adjective 'violent' is attached to the noun 'felony,' its connotation of strong physical force is even clearer.'" *Id.* (citations omitted). I must thus analyze whether third degree robbery under New York law necessarily involves the use of "violent force," as defined in *Curtis Johnson*.

New York law states that "[a] person is guilty of robbery in the third degree when he forcibly steals property." N.Y. Penal Law § 160.05. The law further explains as follows:

> A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of:
>
> 1. Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or
>
> 2. Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny.

N.Y. Penal Law § 160.00.

I look to New York state court decisions for binding interpretations of this statute. *See Curtis Johnson*, 559 U.S. at 138. Case law from the Appellate Division shows that defendants

can be convicted of robbery without using violent force.  *See, e.g.*, *People v. Bennett*, 631

N.Y.S.2d 834, 834 (N.Y. App. Div. 1995) (defendant guilty of robbery in the second degree

where "he and three others formed a human wall that blocked the victim's path as the victim

attempted to pursue someone who had picked his pocket, allowing the robber to get away");

*People v. Lee*, 602 N.Y.S.2d 138, 138 (N.Y. App. Div. 1993) (defendant guilty of second degree

robbery where he "bumped his unidentified victim, took money, and fled while another forcibly

blocked the victim's pursuit"); *People v. Patton*, 585 N.Y.S.2d 431, 431 (N.Y. App. Div. 1992)

(defendant guilty of second degree robbery where "codefendant actually stole [a] chain and

medallion" from the victim, while defendant "acted as a blocker" by "stepp[ing] in front of [the

victim] and persistently shov[ing] him back"); *People v. Safon*, 560 N.Y.S.2d 552, 552 (N.Y.

App. Div. 1990) (defendant guilty of third degree robbery where "store clerk grabbed the hand in

which defendant was holding . . . money and the two tugged at each other until defendant's hand

slipped out of the glove holding the money" because this was "sufficient to prove that defendant

used physical force for the purpose of overcoming the victim's resistance to the taking").

Each of these cases involves the use of a degree of force than is lesser than "force capable

of causing physical pain or injury to another person," *see Curtis Johnson*, 559 U.S. at 140,

namely, blocking a victim's path, bumping or shoving the victim, and tugging at a victim's hand.

Thus, under New York law, a defendant can be convicted of robbery when he uses force

sufficient to overcome a victim's resistance without necessarily putting the victim at risk of pain

or injury.  Other courts have so held.[8]  *See Johnson*, 2016 WL 6684211, at *6 (concluding that

"Appellate Division decisions demonstrate that robbery in New York does not necessarily

---

[8]    A Second Circuit panel has analyzed New York case law to come to this same conclusion, *see United States v. Jones*, 830 F.3d 142 (2d Cir. 2016), though the decision was vacated and held in abeyance pending the Supreme Court's disposition on issues unrelated to this case.

involve force 'capable of causing physical pain or injury to another,' as is required under [*Curtis Johnson*]"); *United States v. Moncrieffe*, 167 F. Supp. 3d 383, 403 (E.D.N.Y. 2016) (stating that "New York courts have explained that the 'physical force' threatened or employed [to commit a robbery] can be minimal, including a bump, a brief tug-of-war over property, or even the minimal threatened force exerted in 'blocking' someone from pursuit by simply standing in their way").

The government cites a number of New York cases to argue that robbery under New York law necessarily involves the level of violent force described in *Curtis Johnson*. *See* Gov't's Second Opp'n at 4, Dkt. #100. However, as the government seems to acknowledge in its explanation of the cases, they show only that "the crime of robbery in New York cannot be accomplished by mere unwanted touching or a sudden and stealthy seizure." *Id.* Of course, the fact that robbery cannot be accomplished by these means does not necessarily lead to the conclusion that robbery requires force capable of causing pain or injury. *See Johnson*, 2016 WL 6684211, at *6 ("All that [*People v. Jurgins*, 46 N.E.3d 1048 (N.Y. 2015),] stands for is that a 'stealthy seizure or snatching' does not fall within Penal Law § 160.05. It does not tell us whether there are other acts that might fall within it, but would not constitute force that is 'capable of causing physical pain or injury,' as [*Curtis Johnson*] requires.").

The government also cites a number of Second Circuit cases in support of its contention that robbery under New York law remains a violent felony after *Curtis Johnson*. Gov't's First Opp'n at 5, Dkt. #92; Gov't's Second Opp'n at 2–3, Dkt. #100. However, each of the cases that the government cites was either decided prior to *Curtis Johnson*, or is a non-precedential summary order that does not analyze robbery in light of *Curtis Johnson*'s definition. The only published post-*Curtis Johnson* decision that the government cites does not squarely address this

issue because the defendant in that case *conceded* that third degree robbery was a violent felony under the force clause, and the Second Circuit merely acknowledged that it had so held in the 1995 *Brown* case cited above. *See United States v. Miles*, 748 F.3d 485, 490 (2d Cir. 2014) (citing *Brown*, 52 F.3d at 425–26).

"Lower courts are bound by Second Circuit precedent 'unless it is expressly or implicitly overruled' by the Supreme Court or an en banc panel of the Second Circuit." *In re S. African Apartheid Litig.*, 15 F. Supp. 3d 454, 459 (S.D.N.Y. 2014). I conclude that the Second Circuit precedent holding robbery to be a violent felony under the force clause has been implicitly overruled by the Supreme Court's definition of "violent felony" in *Curtis Johnson*, because, as explained above, it is possible to commit third degree robbery without using "force capable of causing physical pain or injury to another person," *see Curtis Johnson*, 559 U.S. at 140.

Thus, I conclude that third degree robbery and attempted third degree robbery under New York law do not necessarily involve the use of "violent force." As a result, those crimes cannot be predicate violent felonies under the ACCA's force clause. Because Thrower does not have three qualifying violent felony convictions, any reliance on the residual clause during Thrower's sentencing could not have been harmless, and Thrower's § 2255 motion must be granted. *See, e.g.*, *Curry*, 2016 WL 6997503, at *4 ("[Petitioner] is entitled to relief if he can establish by a preponderance of the evidence that: (1) the record does not refute his assertion that the sentencing Court may have relied on the residual clause in applying the ACCA enhancement, in violation of *Johnson*, and (2) under current binding precedent . . . his . . . convictions no longer qualify as ACCA 'crimes of violence.'"). Thrower is thus entitled to resentencing. *See McKnight v. United States*, Nos. 6:16-cv-6396, 6:05-cr-6024, 2016 WL 6663349, at *1 (W.D.N.Y. Nov. 11, 2016). Without three qualifying convictions for violent felonies, Thrower is

subject to a maximum sentence of 10 years' imprisonment, *see* 18 U.S.C. § 924(a)(2), which he has already served.

## CONCLUSION

For the foregoing reasons, Thrower's 28 U.S.C. § 2255 motion is granted. Thrower's immediate release is ordered because he has now served more than the statutory maximum for the offense of conviction. *See Lynch v. United States*, 03 Crim. 928, 14 Civ. 4687, 2015 WL 9450873, at *3 (S.D.N.Y. Dec. 8, 2015). This order will become effective 48 hours after filing in order to allow the government to seek a stay of the decision from the Second Circuit. An Amended Judgment will be entered, reducing Thrower's term of imprisonment from 180 months to 120 months. Thereafter, the Clerk of Court is respectfully requested to close this case.

SO ORDERED.

/s/ ARR_____
Allyne R. Ross
United States District Judge

Dated:      February 13, 2017
           Brooklyn, New York