UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- X
                                                      :

UNITED STATES,                                     :         04-CR-903 (ARR)

    -against-                                          :

                                                     :         **OPINION & ORDER**

WILLIAM THROWER,                       :

        Defendant.                      :

------------------------------------------------------------------------- X

ROSS, United States District Judge:

       Defendant, William Thrower, faces a November 16, 2020 surrender date following the Second Circuit's reversal of my order vacating the remainder of his sentence under the Armed Career Criminal Act ("ACCA"). *See* Text Order (Aug. 31, 2020). He moves to modify his reinstated sentence for being a felon in possession of a firearm to time served. Def.'s Mot. for Sentence Reduction 2 ("Def's Br."), ECF No. 156. The government opposes, arguing that 18 U.S.C. § 3582(c)(1)(A) does not allow defendant to bring such a motion before re-entering the custody of the Bureau of Prisons ("BOP"), and even if it did, Mr. Thrower does not raise "extraordinary and compelling reasons" justifying a sentence reduction. Gov't Opp'n to Mot. for Sentence Reduction 3–6 ("Gov't Opp'n"), ECF No. 158.

       I grant Mr. Thrower's motion and modify his sentence to time served. I agree with the one district court to have decided the issue that a defendant in Mr. Thrower's precise circumstances may seek a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). I find the statute's exhaustion requirement either met or waived. I consider the totality of Mr. Thrower's circumstances—his reentry efforts, his cognitive deficits, and his vulnerability to COVID-19—to constitute extraordinary and compelling reasons to reduce his sentence. While Mr. Thrower has a

1

significant criminal record, including violations of supervised release, the government does not dispute that he poses no present danger. Having served eighty-two percent of his sentence, Mr. Thrower has received a just punishment and deserves a fresh start.

## BACKGROUND

In April 2005, Mr. Thrower was convicted by a jury of being a felon in possession of a firearm (found during a routine traffic stop), in violation of 18 U.S.C. § 922(g)(1). Minute Entry, ECF No. 28; J. Crim. Case 1, ECF No. 62; Sentencing Tr. 8, ECF No. 67. At the time of sentencing, in 2008, Thrower had the following five prior felony convictions: (1) a 1981 conviction for first degree robbery, in violation of New York Penal Law § 160.15; (2) a 1981 conviction for third degree burglary, in violation of New York Penal Law § 140.20; (3) a 1993 conviction for fourth degree larceny, in violation of New York Penal Law § 155.30; (4) a 1994 conviction for attempted third degree robbery, in violation of New York Penal Law § 160.05; and (5) a 2000 conviction for third degree robbery, in violation of New York Penal Law § 160.05. *See Thrower v. United States*, 234 F. Supp. 3d 372, 374 (E.D.N.Y. 2017). I determined that at least three of these convictions were for "violent felonies" within the meaning of the ACCA, such that Mr. Thrower was subject to a mandatory minimum sentence of fifteen years' imprisonment. *See* 18 U.S.C. § 924(e)(1); Sentencing Tr. 3–6, 16.

In February 2017, after Mr. Thrower had served 149 months in prison, I vacated the remainder of his sentence, holding his prior convictions for third degree robbery and attempted third degree robbery did not qualify as violent felonies under the ACCA's force clause, given the Supreme Court decision in *Johnson v. United States*, 559 U.S. 133 (2010). *See Thrower*, 234 F. Supp. 3d at 385; Def.'s Br. 1. The Second Circuit reversed this decision in January 2019, remanding for me to reinstate Mr. Thrower's original sentence. *See United States v. Thrower*, 914

2

F.3d 770, 777 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 305 (2019). The mandate issued on October 8, 2019. *See* Mandate, ECF No. 149.

Meanwhile, Mr. Thrower struggled to adjust to life at liberty. In September 2017, I modified his supervised release conditions to include mental health counseling and in-patient substance abuse treatment. Order Modifying Supervised Release Conditions, ECF No. 114. In January 2018, I held his original supervised release violation in abeyance so he could participate in an in-patient program at Samaritan Village, which he completed in May 2018. Order Modifying Supervised Release Conditions, ECF No. 123; Def.'s Br. 6. However, he failed to attend the subsequent outpatient program and failed to notify the Probation Department of his address after that. Def.'s Sentencing Mem. 2, ECF No. 133; Gov't Sentencing Mem. 1, ECF No. 134. After he pleaded guilty to violating four of the terms of his supervised release, I sentenced him on October 30, 2018 to eight months' imprisonment with no supervision to follow. J. Violation of Supervised Release, ECF No. 141. He was released from BOP custody on November 8, 2018. *See* Inmate Locator, BOP, https://www.bop.gov/inmateloc (last visited Oct. 16, 2020).

Mr. Thrower now lives at a shelter in the Bronx, which is helping him obtain permanent housing. Def.'s Br. 6. He receives mental health treatment and physical therapy. *Id.* Having sustained a traumatic brain injury in 2009, he struggles with "Dementia," "Delusional disorder," "Cognitive deficits," and "Major Neurocognitive Disorder." *See* Oct. 2018 Medical Records 3–4, ECF No. 153.[1] He also has difficulty concentrating and recalling information. *See* Psychological

---

[1] I include details of Mr. Thrower's medical diagnoses here, even though his medical records remain under seal. Mr. Thrower has mentioned many of these details in his public motion papers. *See* Def.'s Br. 7; Def.'s Reply 3, ECF No. 159. Doing so "largely waive[s]" his privacy interest in these facts. *United States v. Ebbers*, 432 F. Supp. 3d 421, 423 n.1 (S.D.N.Y. 2020). Given that his conditions are central to his claims for a sentence reduction, I find "the presumption of access to the courts overcomes [his] privacy interest" in any case. *Id.* (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006)). I direct Mr. Thrower to propose redactions to the

Evaluation at 2–3, ECF No. 138 (annexed as Ex. 1 to Def.'s Sentencing Mem.). In addition to his mental health issues, he suffers from "Type 2 diabetes mellitus with hyperglycemia" and "Essential (primary) hypertension." *See* Feb. 2020 Medical Records at 8, ECF No. 157. According to the Centers for Disease Control and Prevention ("CDC"), individuals with type II diabetes are at increased risk of severe illness from COVID-19, and those with hypertension might be at an increased risk. *See People with Certain Medical Conditions*, *Coronavirus Disease 2019 (COVID-19)*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Oct. 16, 2020).

On August 28, 2020, Mr. Thrower sought permission to bring a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). *See* Letter, ECF No. 152. On August 31, 2020, I granted him leave to do so, reinstated his original sentence pursuant to the Second Circuit mandate, and set his surrender date for November 16, 2020. Text Order (Aug. 31, 2020). On September 1, 2020, Mr. Thrower submitted an administrative request for a sentence reduction to the warden of FCC Hazleton, the last BOP facility where he was incarcerated. Administrative R. 1, ECF No. 156-2. On September 2, 2020, Mr. Thrower received a response from the "Executive Assistant" of FCC Hazleton that copied and pasted the data points on Mr. Thrower's inmate lookup page, showing he was released from BOP custody in November 2018. *Id.* Mr. Thrower subsequently filed the instant motion on September 14, 2020. *See* Def.'s Br. The government opposed on September 27, 2020, *see* Gov't Opp'n, and Mr. Thrower replied on September 30, 2020, *see* Def.'s Reply.

## LEGAL STANDARD

The First Step Act allows criminal defendants to move for "[m]odification of an imposed

---

sealed medical records that account for the facts stated in this opinion within seven days.

term of imprisonment" before a federal sentencing court. 18 U.S.C. § 3582(c). To qualify for such relief, defendants must show: (1) that they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [their] behalf," or that thirty days have lapsed "from the receipt of such a request by the warden of [their] facility, whichever is earlier"; (2) that "extraordinary and compelling reasons warrant" a reduction in the term of imprisonment; (3) that these reasons outweigh "the factors set forth in section 3553(a) to the extent that they are applicable"; and (4) that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A); *see United States v. Cato*, No. 16-CR-326 (ARR), 2020 WL 5709177, at *3 (E.D.N.Y. Sept. 24, 2020) (noting that defendant bears the burden of proof). "Even if a defendant carries this burden, district courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction." *Cato*, 2020 WL 5709177, at *3 (internal quotation marks omitted).

Accordingly, in determining what constitutes "extraordinary and compelling reasons," a district court has "discretion" to consider "the full slate" of arguments that defendants present to support a sentence reduction. *United States v. Brooker*, No. 19-3218, 2020 WL 5739712, at *7 (2d Cir. Sept. 25, 2020). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'" *Id.* at *8 (quoting 28 U.S.C. § 994(t)).

The Sentencing Commission's policy statement explicating "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i) is not binding on a district court, *see id.* at *6, but it does provide some guidance. Where a defendant seeks a sentencing modification due to medical conditions, the Sentencing Commission suggests that "extraordinary and compelling reasons" may exist in two scenarios. First, "[a] defendant is suffering from a terminal illness," such as "metastatic solid-

tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S. Sentencing Comm'n, U.S. Sentencing Guidelines Manual § 1B1.13 cmt. 1(A)(i) (2018) ("U.S.S.G."). Second, "[a] defendant is . . . suffering from a serious physical or medical condition, . . . suffering from a serious functional or cognitive impairment, or . . . experiencing deteriorating physical or mental health because of the aging process" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which [the defendant] is not expected to recover." *Id.* cmt. 1(A)(ii). In any scenario, "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." *Id.* cmt. 2.

Even if extraordinary and compelling reasons exist, they must outweigh the 18 U.S.C. § 3553(a) factors to warrant sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A). These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . . .
> (5) any pertinent [Sentencing Commission] policy statement . . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

*Id.* § 3553(a).

A sentence reduction is consistent with the Sentencing Commission's policy statements if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). The § 3142(g) factors are largely duplicative of

6

those in § 3553(a), but they also include "whether the offense is a crime of violence" and "the weight of the evidence against the [defendant]." 18 U.S.C. § 3142(g)(1)–(4).

## DISCUSSION

### I. I Can Decide Mr. Thrower's Motion for a Sentence Reduction Before He Re-enters BOP Custody.

Mr. Thrower argues that he may seek a sentence reduction under § 3582(c)(1)(A) before he re-enters BOP custody, given that he already served most of his original sentence and he faces an impending surrender date for the reinstated remainder. Def.'s Br. 11–12. In opposition, the government argues that only defendants currently in physical custody may seek a sentence reduction under the statute. Gov't Opp'n 4. I agree with defendant.

Only one district court nationwide has confronted whether defendants in Mr. Thrower's precise circumstances may seek a sentence reduction under § 3582(c)(1)(A), and it held that they can. In *United States v. Austin*, Judge Rakoff ordered a sentence reduction for a defendant who had served the majority of his sentence, was released from custody after the district court vacated his remaining sentence, and faced reincarceration after the court of appeals reversed the district court decision. *See* No. 06-CR-991 (JSR), 2020 WL 3447521, at *1, *4 (S.D.N.Y. June 22, 2020). Judge Rakoff reasoned that the statute itself does not "express[ly] require[]" BOP custody and fashions relief as "a reduction in sentence, and not, specifically, release from custody." *Id.* at *2. Thus, the statute "implies that the only absolute requirement is that a defendant be subject to a federal sentence." *Id*. Because Mr. Austin was subject to his original fifteen-year sentence and had already served most of it, his "incarceration [wa]s not a distant or hypothetical possibility" and he could seek a sentence reduction under the statute "in [his] narrow and exceptional situation." *Id.* at *3. "To hold otherwise — that is, to find Austin ineligible to bring the instant motion today, but eligible . . . only after suffering the severe and irreversible disruption that a return to prison would

cause — would be a hypertechnical and inequitable result[.]" *Id.*

The same reasoning applies here. Mr. Thrower had served 149 months before his release in 2017. Def.'s Br. 2. He is subject to his original reinstated sentence, and his November 16, 2020 surrender date looms, such that "incarceration is not a distant or hypothetical possibility" for him. *Austin*, 2020 WL 3447521, at *3. Given the First Step Act's purpose of "[i]ncreasing the [u]se and [t]ransparency of [c]ompassionate [r]elease," *Brooker*, 2020 WL 5739712, at *4 (quoting P.L. 115-391 § 603(b), 132 Stat. 5194, 5239), on these particular facts, it would be inequitable to require Mr. Thrower to submit to BOP custody before seeking a sentence reduction. *Cf. Hensley v. Mun. Court, San Jose Milpitas Judicial Dist.*, 411 U.S. 345, 352–53 (1973) (holding habeas petitioner could challenge consecutive sentence not yet served because "[h]is incarceration is not . . . a speculative possibility" and "we would badly serve the purposes and the history of the writ to hold that under these circumstances the petitioner's failure to spend even 10 minutes in jail is enough to deprive the District Court of power to hear his constitutional claim"). Thus, Mr. Thrower too may seek a sentence reduction.

The government claims *Austin* was wrongly decided for two reasons. Gov't Opp'n 4–5. First, it argues § 3582(c)(1)(A)'s exhaustion requirement indicates "Congress assumed that a petitioner under the First Step Act would be in custody."[2] *Id.* at 4. By that interpretation, the government submits that Mr. Austin and Mr. Thrower are no different from defendants who have been sentenced but have not yet entered federal custody whom district courts have found ineligible

---

[2] The government supports this argument with a quote from *Brooker* that under § 3582(c)(1)(A), "*an imprisoned person* moving for compassionate release can now bring a claim before the courts even if the BOP opposes the claim." Gov't Opp'n 4 (quoting *Brooker*, 2020 WL 5739712, at *6 (emphasis added)). *Brooker* did not address whether a defendant in Mr. Thrower's situation may seek a sentence reduction under this statute, and thus this unrelated statement has no bearing on the issue before me.

8

for relief under the statute because they too are at liberty. *Id.* at 5 (citing *United States v. Konny*, No. 19-CR-283 (JGK), 2020 WL 2836783, at *2 (S.D.N.Y. May 30, 2020); *United States v. Spruill*, No. 18-CR-22 (VLB), 2020 WL 2113621, at *3 (D. Conn. May 4, 2020)). Second, the government objects to Judge Rakoff's reliance on cases where courts ordered sentence reductions for defendants in a halfway house or hospital to distinguish Mr. Austin from the defendants in *Konny* and *Spruill*. *See id.* at 5 (citing *United States v. Campagna*, No. 16-CR-78 (LGS), 2020 WL 1489829, at *1 (S.D.N.Y. Mar. 27, 2020); *United States v. DeBello*, No. 15-CR-491 (JSR), ECF No. 819 (S.D.N.Y. Apr. 20, 2020)). It argues *Campagna* and *DeBello* were inapposite because the defendants there "remained under the BOP's control, . . . the BOP owed [them] administrative rights, and there was a BOP official in charge of [them]." *Id.*

Both arguments fail. I agree that the exhaustion requirement indicates that Congress assumed the mine-run of defendants seeking sentence reductions under § 3582(c)(1)(A) would be in custody. That assumption may support interpreting the statute to exclude the defendants in *Konny* and *Spruill*, who awaited incarceration for the first time after being sentenced in the normal course—a common scenario Congress likely considered. But it is unlikely that Congress confronted the peculiar facts at issue here and in *Austin*—where defendants face *re*incarceration after serving most of their sentence and living at liberty for years. Nor does the plain text of the statute speak to these circumstances. What Congress did intend is that the First Step Act broaden defendants' access to federal courts to seek sentence reductions. *See Brooker*, 2020 WL 5739712, at *4. Where nothing in the text bars such a result, interpreting this ambiguous statute to favor Mr. Austin and Mr. Thrower serves Congress's overall goal and avoids an inequitable outcome. *See, e.g.*, *Rabin v. Wilson-Coker*, 362 F.3d 190, 196–97 (2d Cir. 2004) ("[T]he interpretation given to [a] statute must be consistent with the congressional purpose for enacting it." (citing *Holloway v.*

9

*United States*, 526 U.S. 1, 9 (1999))).

Further, *Campagna* and *DeBello* disprove any strict custody requirement implicit in § 3582(c)(1)(A). If the statute contained such a condition, these defendants would not have been able to seek sentence reductions because regardless of whether those defendants were in some sort of BOP control, the key fact is that they were not in the agency's—or any other custodian's—*physical* control in the traditional sense. For that reason, the BOP lacked the power to reduce their sentences through administrative means, and yet the government did not oppose district courts ordering relief under § 3582(c)(1)(A).[3] These cases show the statute may encompass defendants who are not technically in custody but face unusual circumstances such that excluding them from seeking sentence reductions would be "hypertechnical," "inequitable," and contrary to the First Step Act's purpose. *Austin*, 2020 WL 3447521, at *3. That same logic applies here and in *Austin*.

Importantly, the *Austin* court limited its decision to "the narrow and exceptional situation presented"—where the defendant served most of his sentence, was released after the district court vacated the rest of it, and faced reincarceration after that decision was reversed. *Id*. I hold the same here. I interpret § 3582(c)(1)(A) only to conclude that Mr. Thrower, in his specific circumstances, may seek a sentence reduction under the statute, and nothing more.

## II. Mr. Thrower Warrants a Sentence Reduction.

Mr. Thrower has met all four conditions for warranting a sentence reduction under § 3582(c)(1)(A)(i), and I thus modify his sentence to time served.

---

[3] Where defendants were held by a different custodian, the government has not opposed their seeking sentence reductions before district courts even though the BOP could not order such relief itself. *See, e.g.*, *United States v. Levy*, No. 16-CR-270 (ARR), 2020 WL 2393837, at *3 (E.D.N.Y. May 12, 2020) (defendant held in county jail); *United States v. Hernandez*, 451 F. Supp. 3d 301, 303 (S.D.N.Y. 2020) (defendant held by U.S. Marshals in private facility).

### A. The Exhaustion Requirement Is Either Met or Waived.

Defendant claims I "have the authority to hear and rule on" this motion because thirty days have passed since Mr. Thrower petitioned the warden of FCC Hazelton. Def.'s Br. 10. District courts, however, are split on whether the "lapse" provision of § 3582(c)(1)(A) allows defendants to seek a sentence reduction from the district court after thirty days no matter whether the agency has decided the request. *See United States v. Kissi*, No. 13-CR-51 (MKB), 2020 WL 3723055, at *7 (E.D.N.Y. June 26, 2020) (collecting cases). I find it more persuasive that the exhaustion requirement is met on this ground only when the BOP has failed to decide a defendant's administrative request within thirty days. *See id.* at *8; *see also Cato*, 2020 WL 5709177, at *4. In any event, courts typically interpret the statute to require defendants to wait until they have met the exhaustion requirement before bringing a motion in the district court in the first place. *See, e.g., Kissi*, 2020 WL 3723055, at *7 (collecting cases); *United States v. Nazer*, No. 18-CR-783 (ARW), 2020 WL 2197840, at *3 (N.D. Ill. May 6, 2020) (finding defendant failed to meet the exhaustion requirement because defendant "did not wait for the expiration of th[e] 30-day period to file the present motion").

Here, Mr. Thrower petitioned the warden of FCC Hazelton on September 1, 2020 such that the thirty-day period would expire on October 1, 2020. Def.'s Br. 10. Because the September 2, 2020 e-mail he received from the Executive Assistant does not articulate a decision on Mr. Thrower's request, it is unclear whether it is a denial. *See* BOP, Program Statement 1330.18, at 10 (Jan. 6, 2014), https://www.bop.gov/policy/progstat/1330_018.pdf (stating a warden's response to an administrative request "shall state the decision reached and the reasons for the decision"). Regardless, Mr. Thrower filed the instant motion on September 14, 2020, before the thirty-day period had lapsed (albeit on court order). *See* Def.'s Br.; Text Order (Aug. 31, 2020).

11

I need not decide whether this timing meets the exhaustion requirement because in any case I find exhaustion to be waived. Several district courts have found § 3582(c)(1)(A)'s exhaustion requirement not to be jurisdictional. *See Kissi*, 2020 WL 3723055, at *6 (collecting cases). I agree. This requirement may be waived where "[exhaustion] would be futile, . . . where the administrative process would be incapable of granting adequate relief . . . [or] where pursuing agency review would subject [the person seeking relief] to undue prejudice." *Cato*, 2020 WL 5709177, at *4 (quoting *Washington v. Barr*, 925 F.3d 109, 118–19 (2d Cir. 2019) (alterations in original)). Additionally, "courts have found waiver to be justified based on the existence of a COVID-19 outbreak at the facility where the defendant is being held, combined with a medical condition that places the defendant at risk of suffering severe complications if he were to contract COVID-19." *Id.* (collecting cases).

It would be futile for Mr. Thrower to go through the administrative review process because the BOP maintains it does not have the power to grant a sentence reduction to a defendant not in its custody. *See Levy*, 2020 WL 2393837, at *3; *Hernandez*, 451 F. Supp. 3d at 303 (noting BOP general counsel determined the agency could not order a sentence reduction for a defendant in a county jail "because the BOP is structurally incapable of assessing his circumstances"). Moreover, even though the BOP has not designated a facility for Mr. Thrower yet, if a COVID-19 outbreak occurs wherever he is held, his type II diabetes and hypertension together pose an increased risk of serious complications from contracting the virus. *See infra* II.B. Taken together, these facts sufficiently warrant waiving the exhaustion requirement.

### B. Extraordinary and Compelling Reasons Exist.

Mr. Thrower presents three grounds for finding that extraordinary and compelling reasons justify reducing his sentence to time served. First, reincarceration would disrupt his ongoing

reentry efforts. Def.'s Br. 6–7. Second, his dementia and cognitive deficits would imperil his ability to take care of himself in custody. *Id.* at 7. Third, his type II diabetes and hypertension would increase his risk of serious complications from COVID-19. *Id.* at 7–9. I find that the combination of these factors constitutes extraordinary and compelling reasons.

While rehabilitation alone cannot support a claim for sentence reduction, I may consider it as a factor in evaluating extraordinary and compelling reasons. *See Brooker*, 2020 WL 5739712, at *8.[4] Here, Mr. Thrower is living at a shelter that is helping him find a permanent apartment. Def.'s Br. 6. He is receiving mental health treatment and physical therapy to help him get his life back on track. *Id.* While he served an eight-month sentence for violating supervised release, he has been at liberty for nearly two years. *Id.* "Returning him to custody could only undermine this progress." *Austin*, 2020 WL 3447521, at *3. The government claims Mr. Thrower's reentry efforts are not "extraordinary" in themselves, which distinguishes him from the defendant in *Austin*. Gov't Opp'n 4. But no matter the degree to which Mr. Thrower has achieved reentry into society, reincarcerating him would erase all the steps he has made. And these steps have been meaningful to him, as he has spent much of his adult life cycling through the criminal legal system, ever since his first conviction at sixteen years old. *See* Sentencing Tr. 5. Accordingly, this factor holds significant weight in determining whether extraordinary and compelling reasons exist.

Additionally, Mr. Thrower "suffer[s] from [] serious . . . cognitive impairment[s]" that "substantially diminish[] [his] ability . . . to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13 cmt. 1(A)(ii). These include "Dementia," "Delusional disorder," "Cognitive deficits," and "Major Neurocognitive Disorder Due to Traumatic Brain Injury: With Behavioral Disturbance." Oct. 2018 Medical Records 3–4; *see also* Psychological

---

[4] *Brooker* forecloses the government's argument to the contrary. *See* Gov't Opp'n 3–4.

13

Evaluation 2–3. The record lacks further expert testimony on whether these conditions hamper Mr. Thrower's ability to take care of himself and whether he is expected to recover from them. Nevertheless, the government does not dispute Mr. Thrower's assertions, nor does it address his cognitive difficulties at all. This is not surprising because even as a layperson in medicine, I can see that Mr. Thrower's conditions would pose challenges if he returned to prison, although Mr. Thrower may not have shown that they independently justify a sentence reduction. I thus give this factor significant weight, as well.

Finally, as many courts have held, the COVID-19 pandemic combined with a defendant's high-risk conditions may constitute extraordinary and compelling reasons for sentence reduction. *See Cato*, 2020 WL 5709177, at *4 (collecting cases). In light of the CDC's determination that such conditions increase individuals' risk of serious complications from COVID-19, several courts have ordered sentence reductions for defendants with type II diabetes and hypertension during the pandemic. *See, e.g.*, *United States v. Ramirez*, No. 19-CR-105 (LGS), 2020 WL 4577492, at *2 (S.D.N.Y. Aug. 6, 2020); *United States v. Rivernider*, No. 10-CR-222 (RNC), 2020 WL 2393959, at *1 (D. Conn. May 12, 2020); *United States v. Sawicz*, 453 F. Supp. 3d 601 (E.D.N.Y. 2020). Here, Mr. Thrower's February 2020 medical records indicate he has both "Type 2 diabetes mellitus with hyperglycemia" and "Essential (primary) hypertension." *See* Feb. 2020 Medical Records 8.

The government does not dispute these diagnoses but instead argues that I cannot evaluate the medical risk Mr. Thrower faces until the BOP designates a facility for him. Gov't Opp'n 5. That argument may defeat COVID-19-risk as an independent ground for extraordinary and compelling reasons here, but the risk of contracting the virus in BOP custody generally is substantial enough to consider in the totality of circumstances. As of October 16, BOP confirms active COVID-19 cases at 119 of 122 BOP carceral institutions, or nearly ninety-eight percent.

*See* BOP, *COVID-19 Cases*, https://www.bop.gov/coronavirus (last visited Oct. 16, 2020); BOP, *Our Locations*, https://www.bop.gov/locations/ (last visited Oct. 16, 2020). Meanwhile, many parts of the country are experiencing increased infection rates. *See, e.g.*, Lisa Shumaker, *U.S. COVID-19 Cases Hit Two-Month High, 10 States Report Record Increases*, Reuters (Oct. 10, 2020), https://www.reuters.com/article/health-coronavirus-usa/u-s-covid-19-cases-hit-two-month-high-10-states-report-record-increases-idUSKBN26V0GE. As cases continue to rise, Mr. Thrower is nearly guaranteed to be held at a facility that experiences a COVID-19 outbreak, and his comorbidities could lead to devastating consequences if he contracts the virus. Considering all these factors combined, I find Mr. Thrower presents extraordinary and compelling reasons for reducing his sentence.

### C. The § 3553 Factors Do Not Outweigh the Reasons Justifying a Sentence Reduction.

The § 3553 factors do not defeat Mr. Thrower's claim for a sentence reduction. I acknowledge that Mr. Thrower's criminal history is extensive. After police found a gun on his person during a routine traffic stop, he was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1), triggering a 180-month statutory minimum sentence. J. Crim. Case 1; Sentencing Tr. 8. His § 924(e)(1) conviction stemmed from several theft offenses committed in New York State, beginning when he was sixteen years old. Sentencing Tr. 5. I also sentenced him to eight months' imprisonment for violating supervised release. J. Violation of Supervised Release.

Nevertheless, he is fifty-six years old now. Def.'s Br. 7. He has the opportunity to rebuild his life, and he has taken significant steps to do so. *Id*. at 6. He is receiving mental health services and physical therapy at liberty, *id.* at 6, and it is unclear whether those programs would continue in BOP custody. He has obtained just punishment because he already has served eighty-two

15

percent of his original sentence for a crime that involved no co-defendants or victims. *Id*. at 5. All told, while some of the § 3553 factors weigh against reducing his sentence, Mr. Thrower's reentry progress, major cognitive difficulties, and high-risk conditions to COVID-19 outweigh those considerations.

### D. A Sentence Reduction Is Consistent with Sentencing Commission Policy Statements.

Mr. Thrower does not pose a present danger, nor does the government argue he does. He is focused on reentry, and his previous stumbles in that process "did not show that he was a danger to the community, but a person struggling with personal and health issues." *Id.* at 6. Having spent the past forty years in and out of prison battling various mental and physical impairments, Mr. Thrower now is fifty-six years old and has little incentive to risk going back to jail. I decline to send him there.

## CONCLUSION

For the foregoing reasons, Mr. Thrower's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is granted. His November 16, 2020 surrender date therefore is revoked, and he is resentenced to time served.

SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:      October 19, 2020
            Brooklyn, New York

16